IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PPL ELECTRIC UTILITIES, *et al.* | : : : | CIVIL ACTION |
| v. | : : | NO. 24-0072 |
| IBEW LOCAL 1600 | : : : | |

**MEMORANDUM OPINION**

Henry, J.  *s/CH*                                                                                                July 21, 2025

This case is before me on the parties' cross motions for summary judgment (ECF Nos. 17 & 19). For the reasons that follow, I grant summary judgment in favor of Plaintiffs PPL Electric Utilities and PPL Services Corporation (together, "PPL"). Defendant IBEW Local 1600's (the "Union") Motion for Summary Judgment is denied.

## I.   BACKGROUND

The material facts of the case are undisputed. PPL delivers electricity to customers in Pennsylvania. *See* ECF No. 17-2 (Plaintiff's Statement of Undisputed Material Facts ("Pl. SOMF")) at ¶ 1. The Union represents PPL employees. *Id.* at ¶ 4. PPL and the Union are parties to a collective bargaining agreement (the "CBA"). *Id.* at ¶ 5.

Kyle Ross, a lineman at PPL, called out of work on December 22 and 23, 2021 (a Thursday and Friday) due to an ongoing health issue. *See* ECF No. 19-2 (Defendant's Statement of Undisputed Material Facts ("Def. SOMF")) at ¶ 10. Because of a high number of linemen calling out of work around that time, Mr. Ross's supervisor instructed him to provide a doctor's note upon his return to work or he would be sent home.[1] *Id.* at ¶ 13. Mr. Ross thus went to Urgent Care on

---

[1] Article VIII, Section 1(E) of the CBA provides that "Employees are required to furnish medical certification of illness or injury for all absences in excess of three (3) in a pay period year or anytime an employee is out three (3) or

1

December 26 to get a doctor's note, which cost him $50 and stated he could return to work on December 27. *Id.* at ¶ 14. After presenting the note to his supervisor on December 27, Mr. Ross requested reimbursement for the doctor's note, which his supervisors denied. *Id.* at ¶ 15.

Following denial of the reimbursement, the Union submitted a grievance to PPL on behalf of Mr. Ross on January 12, 2022, seeking reimbursement and a cease and desist. *Id.* at ¶ 16; ECF No. 22 ("Bouchard Decl."), Ex. D. Mr. Ross's supervisor denied the grievance on January 14, stating that there was "no violation of the Labor Agreement." Def. SOMF at ¶ 17.

The grievance proceeded to arbitration before Arbitrator Lawrence S. Coburn (the "Arbitrator") and a hearing was held on September 26, 2023 to decide the issue of "whether the Company violated the Collective Bargaining Agreement by failing to reimburse Grievant for obtaining the medical certification dated 12/26/21." *Id.* at ¶¶ 18-19; Compl., Ex. A (the "Award") at 17. The Union's theory was that Article II, Section 3(A) of the CBA[2] required PPL to comply with the Medical Pay Law Act of 1961 (the "MPL").[3] Award at 17. Specifically, the Union argued

---

more consecutive workdays." Section 1(D) provides that "If there is a question regarding the nature or legitimacy of the employees need for time off, the Company may require medical certification." Section 1(E) further provides that "Employees returning to work without proper certification will have the period of absence charged to 'Time Off Without Pay - No Permission' as follows: 1. From the fourth occurrence of illness and each subsequent illness within the pay period year; or, 2. After an employee is out three (3) or more consecutive days." *See* ECF No. 1 ("Compl."), Ex. B. at 34.

[2] Article II, Section 3(A) of the CBA provides: "Section 3. Regulation - Government Agencies

    A.   The parties hereto recognize that the business of the Company is subject to regulation by the Pennsylvania Public Utility Commission and other governmental agencies in accordance with law. The parties agree that such regulation shall be respected and complied with by both parties to this Agreement."

[3] The MPL provides, in relevant part:

"Section 2. It shall be unlawful for any employer to require any employe [sic] or applicant for employment to pay the cost of a medical examination, or the cost of furnishing any medical records, required by the employer as a condition of employment, if the applicant or employe works for the employer for one work week: Provided, That the provisions of this act shall not apply where medical examination is required by law as a condition of employment.

Section 3. Any employer violating the provisions of this act shall be guilty of a summary offense and, upon a conviction thereof, shall be sentenced to pay a fine of not less than ten dollars ($10) nor more than one hundred dollars ($100). It shall be the duty of the Department of Labor and Industry to enforce the provision of this act."

2

that because Article II, Section 3 of the CBA states that PPL is regulated by "other governmental agencies in accordance with law," the parties incorporated regulations by the Department of Labor and Industry ("DOLI") into the CBA. *See* ECF No. 23 (Defendant's Answer to Pl. SOMF) at ¶ 15. Since DOLI enforces the MPL, and, according to the Union, the MPL required reimbursement, reimbursement was thus required under the CBA. *Id.* PPL argued that the CBA did not empower the Arbitrator to interpret or enforce the MPL. Pl. SOMF at ¶ 18.

The Arbitrator issued the Award on December 7, 2023 in favor of the Union, stating that PPL had violated the CBA and was required to reimburse Mr. Ross $50 and cease and desist from future violations of the MPL. Def. SOMF at ¶ 22.

The Arbitrator interpreted Article II, Section 3(A) of the CBA, finding that "the government agencies referred to . . . include all government agencies that regulate the Company, at least with respect to employment issues, including the Pennsylvania Department of Labor & Industry, the government agency responsible for enforcing the MPL." Award at 17. The Arbitrator then "construe[d] 'condition of employment,' as the phrase is used in the MPL to include sick pay and other benefits and working conditions" and "conclude[d] that where, as in this case, the Company conditions entitlement to sick pay on the presentation of a medical certification, the medical certification is required as a condition of employment and the cost of same must be reimbursed to the employee pursuant to the MPL." Award at 19. In so finding, the Arbitrator referred to a 1976 memorandum from Andrea C. Jacobsen, Deputy Attorney General, which advised that "conditions of employment" could include "terms of pay and benefits as well as requirements for hiring or firing." *Id.* The Arbitrator stated that he "would go further than Jacobsen," finding "that the statutory duty imposed on employers . . . applies to circumstances where the employee . . . is required to obtain a doctor's note in order to obtain sick pay, whether or not disciplinary action looms." *Id.*

3

PPL brought suit against the Union, asking the Court to vacate the Award and grant any other relief as may be just and proper. The Union counterclaimed, asking the Court to confirm the Award, direct PPL to pay Mr. Ross the $50 as directed by the Arbitrator, direct PPL to cease and desist from future violations of the MPL, and award any other relief as may be just and proper.

## II. ANALYSIS

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree that there is no dispute as to any material fact. *See* Plaintiffs' Memorandum of Law in Support of Their Motion for Summary Judgment (ECF No. 17-1) ("Pl. Mot.") at 4; Defendant's Memorandum of Law in Support of Its Motion for Summary Judgment (ECF No. 19-1) ("Def. Mot.") at 7. Thus, I am tasked with determining whether either party is entitled to judgment as a matter of law.

### A. Standard of Law

It is axiomatic that an arbitrator's award is entitled to extreme deference from the Court. *See United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960) ("The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."). Well-established precedent holds that courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworks Int'l. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987). Thus, "the standard of review applied by federal

courts to labor arbitration awards is exceedingly narrow." *U.S. Steel and Carnegie Pension Fund v. McSkimming*, 759 F.2d 269, 270 (3d Cir. 1985).[4]

In the context of a labor arbitration, an arbitrator's source of authority is the collective bargaining agreement. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53 (1974). The arbitrator "must interpret and apply that agreement in accordance with the 'industrial common law of the shop' and the various needs and desires of the parties." *Id.*; *see also Enter. Wheel & Car Corp.*, 363 U.S. at 597 ("When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem."). An arbitrator's authority is thus uniquely limited to interpreting the collective bargaining agreement unless the parties to the agreement bargain otherwise. *Enter. Wheel & Car Corp.*, 363 U.S. at 597 ("[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice."); *Alexander*, 415 U.S. at 53-54 ("[T]he arbitrator has authority to resolve only questions of contractual rights."); *Simpson v. APA Transp. Corp.*, No. 81-2327, 1981 WL 2241, at *5 (D.N.J. Oct. 20, 1981) ("The arbitrator's role is specifically confined to the interpretation of the agreement between the Union and the employer based on the intent of the parties.").

An arbitrator may "look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *Enter. Wheel & Car Corp.*, 363 U.S. at 597; *see also Alexander*, 415 U.S. at 53 ("The arbitrator . . . has no general authority to invoke public laws that conflict with the bargain between the parties[.]")

---

[4] "Under the Federal Arbitration Act, a district court may overturn an arbitrator's award only if the 'award was procured by corruption,' 9 U.S.C. § 10(a)(1), if the arbitrators were corrupt or guilty of misconduct, *id.* § 10(a)(2)-(3), or if 'the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made[,]' *id.* § 10(a)(4)." *StoneMor, Inc. v. Int'l Bhd. of Teamsters, Loc. 469*, 107 F.4th 160, 163 (3d Cir. 2024). Here, the issue is whether the Arbitrator exceeded his powers.

5

That being said, parties to a collective bargaining agreement may agree to allow an arbitrator to go beyond the express terms of a collective bargaining agreement. *See High Concrete Structures, Inc. of N.J. v. United Elec., Radio & Mach. Workers of Am., Loc. 166*, 879 F.2d 1215, 1218-19 (3d Cir. 1989). But absent such agreement, either within the collective bargaining agreement or in the submission to the arbitrator, *"*[w]hen the collective bargaining agreement is the sole source of the arbitrator's authority, and it limits awards to an interpretation thereof, the arbitrator must give effect to the plain meaning of the contract language." *Id.* at 1218.

Given the Court's extreme deference to an arbitrator's decision and an arbitrator's general confinement to the terms of the collective bargaining agreement, the Court may not overrule an arbitrator's award just because it disagrees with the arbitrator's interpretation of the collective bargaining agreement. *See Enter. Wheel & Car Corp.*, 363 U.S. at 599 ("[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."); *Simpson*, 1981 WL 2241, at *4 ("[I]t is not for the court to overturn the finding of an arbitrator merely because it might have arrived at a different conclusion given the same facts and testimony."). Indeed, "[a]n arbitrator's award must be upheld 'if the interpretation can in any rational way be derived from the agreement . . . .'" *McSkimming*, 759 F.2d at 270 (quoting *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969)).

The Court may interfere, though, if the arbitrator has exceeded the scope of his authority. For example, an arbitrator's award "will be vacated . . . if there is a 'manifest disregard' of the agreement." *Penn. Power Co. v. Loc. Union No. 272 of the Int'l Bhd. of Elec. Workers, AFL-CIO*, 276 F.3d 174, 178 (3d Cir. 2001). Or the Court may vacate an arbitrator's decision if the arbitrator interprets more than just the collective bargaining agreement if the parties did not bargain for the

6

arbitrator to do so. The quintessential example of this is if the arbitrator engages in statutory interpretation in his award. *See Cheltenham Convalescent Home, Inc. v. Loc. 1034, Drug & Hosp. Div.*, No. 86-6011, 1987 WL 10706, at *2 (E.D. Pa. May 12, 1987) ("[A]n arbitrator does not have the contractual authority to interpret statutory law."); *McSkimming*, 759 F.2d at 271 (finding that an arbitrator exceeded the scope of his authority when the award was "expressly based upon his view of ERISA"); *Simpson*, 1981 WL 2241, at *5 (noting that, had the arbitrator "attempted to interpret [a particular statute] or to decide the . . . issue of statutory construction, he would have exceeded his authority"). "If an arbitral decision is based 'solely upon the arbitrator's view of the requirements of enacted legislation,' rather than on an interpretation of the collective-bargaining agreement, the arbitrator has 'exceeded the scope of the submission' and the award will not be enforced." *Alexander*, 415 U.S. at 53 (quoting *Enter. Wheel & Car Corp.*, 363 U.S. at 597).

PPL would have the Court vacate the Award on two independent grounds: First, that the Arbitrator impermissibly based the Award on the MPL, and second, that he exceeded the scope of his authority by adding contractual obligations that were not part of the CBA. The Union, on the other hand, asks that the Court affirm the Award because it explicitly relied on the CBA and thus "draws its essence" from the CBA.

I agree with PPL that the Arbitrator impermissibly based his Award on the MPL. In beginning his merits analysis, the Arbitrator made clear that he would interpret both Article II, Section 3(A) of the CBA and the MPL. *See* Award at 17 ("The analysis must start with an interpretation of: (1) Article II, Section 3(A); and (2) the MPL."). He proceeded to set forth Article II, Section 3(A) of the CBA:

> Section 3. Regulation - Government Agencies
>
> A. The parties hereto recognize that the business of the Company is subject to regulation by the Pennsylvania Public Utility Commission and other governmental

7

agencies in accordance with law.  The parties agree that such regulation shall be respected and complied with by both parties to this Agreement.

The Arbitrator then interpreted that provision, finding that "the government agencies referred to in Article II, Section 3(A) include all government agencies that regulate the Company, . . . including the Pennsylvania Department of Labor & Industry, the government agency responsible for enforcing the MPL."  Award at 17.

PPL takes issue with this interpretation of Article II, Section 3.  *See* Pl. Mot. at 10 ("Section 3 . . . merely recognizes that PPL and the Union must respect PPL's position as a regulated utility.  Specifically, the 'business of the Company' (transmission and distribution of electricity) is regulated by the Pennsylvania Public Utility Commission and other governmental agencies, which impose unique constraints on PPL's operations.").  Although PPL's own interpretation of Article II, Section 3 is plausible, it is not for the Court to determine whether that is what the parties intended.  The interpretation of the language of the CBA is well within the Arbitrator's scope of authority.  *Enter. Wheel & Car Corp.*, 363 U.S. at 599 ("[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator.").  Whether the Court would have interpreted that provision of the CBA differently is of no matter; the issue is whether this interpretation "can in any rational way be derived from the agreement."  *McSkimming*, 759 F.2d at 270 (internal citation omitted).  I find no grounds to conclude that the Arbitrator's reading of Article II, Section 3—albeit broad—is in "manifest disregard" of the CBA.  *Penn. Power Co.*, 276 F.3d at 178.  I therefore defer to his interpretation of Article II, Section 3 to include all government agencies that regulate PPL.

After he interpreted Article II, Section 3 of the CBA to include all government agencies, including DOLI, the Arbitrator set forth the language of the MPL, a statute that DOLI is responsible for enforcing:

8

> Section 2. It shall be unlawful for any employer to require any employe [sic] or applicant for employment to pay the cost of a medical examination, or the cost of furnishing any medical records, required by the employer as a condition of employment, if the applicant or employe works for the employer for one work week: Provided, That the provisions of this act shall not apply where medical examination is required by law as a condition of employment.
>
> Section 3. Any employer violating the provisions of this act shall be guilty of a summary offense and, upon a conviction thereof, shall be sentenced to pay a fine of not less than ten dollars ($10) nor more than one hundred dollars ($100). It shall be the duty of the Department of Labor and Industry to enforce the provision of this act.

He then proceeded to determine the meaning of "condition of employment" as it appears in Section 2 of the MPL, concluding:

> I construe 'condition of employment,' as the phrase is used in the MPL to include sick pay and other benefits and working conditions. Accordingly, I conclude that where, as in this case, the Company conditions entitlement to sick pay on the presentation of a medical certification, the medical certification is required as a condition of employment and the cost of same must be reimbursed to the employee pursuant to the MPL.

Award at 19.

PPL contends that, in making this conclusion, the Arbitrator based the Award on—and interpreted—the MPL, not the CBA. Pl. Mot. at 5-8. This exercise in "statutory interpretation," PPL says, exceeded the scope of the Arbitrator's authority, which is confined to the CBA. *Id.* at 6.[5] In response, the Union argues that PPL "mischaracteriz[es] [] the Arbitrator's Award as a whole," because the Award was "explicitly and repeatedly based on the CBA." ECF No. 24 (Defendant's Brief in Opposition to Pl. Mot.) ("Def. Opp.") at 6. The Union says that the

---

[5] As part of making this argument, PPL points to a number of other provisions in the CBA that the parties bargained for regarding sick leave, doctor's notes, and expense reimbursements, noting that the CBA does not include language requiring PPL to pay the cost of an employee's doctor's note obtained in connection with sick leave. Pl. Mot. at 6. PPL also indicates that "there was a long past practice under the CBA of requiring employees to bear the cost of doctors' notes, which the Arbitrator deemed to be 'irrelevant.'" *Id.* I do not find these points of evidence persuasive. Although whether the CBA has provisions speaking to sick leave and PPL's past reimbursement practices may be useful in determining whether the Arbitrator "added to" the CBA, they do not aid in the analysis of whether he based the Award on the CBA or the MPL.

9

Arbitrator interpreted Article II, Section 3 of the CBA to include DOLI, and therefore it was the parties—not the Arbitrator—who "inject[ed] the MPL into the contract." *Id.* at 6-7.[6]

I agree with PPL. Although the Union's argument that the parties injected the MPL into the contract is plausible—and for the purposes of deferring to the Arbitrator's interpretation of the CBA, I accept it—the Union fails to rebut PPL's argument that the Arbitrator improperly interpreted the MPL, claiming rather that he "simply interpreted the CBA." *Id.* at 7. But it cannot seriously be said that an arbitrator's construction of a phrase "*as the phrase is used in the MPL*" is merely an interpretation of the CBA and not of the MPL itself. Award at 19 (emphasis added).

The Arbitrator made clear in the Award that he was "construing 'condition of employment,' as the phrase is used in the MPL" and determining what was "mandated by the MPL." Award at 19-20. Indeed, in his conclusion to the Award, the Arbitrator wrote, "I hold that the Company violated Article II, Section 3(A) of the Collective Bargaining Agreement by failing, *as mandated by the MPL*, to reimburse Grievant for the cost of a December 26, 2021 medical certification which was required as a condition of receiving sick pay for the dates of absences covered by the medical certification." Award at 20 (emphasis added). There could not be a clearer indication that the Arbitrator engaged in statutory interpretation, which is expressly forbidden. *See*

---

[6] The Union further contends in response to this part of PPL's argument that the MPL does not "conflict with" the CBA. Def. Opp. at 7. Although the Union attempts to distinguish *Alexander*, which stands for the proposition that an arbitrator "has no general authority to invoke public laws that conflict with the bargain between the parties," by arguing that the MPL does not conflict with the CBA, the Union does not address PPL's argument that later cases hold that an arbitrator may not engage in statutory interpretation. *See, e.g.*, *McSkimming*, 759 F.2d 269. Even accepting that the MPL does not conflict with the CBA, I decline to rely on that aspect of the Union's argument to determine whether the Arbitrator improperly interpreted the MPL in the Award.

Additionally, the Union points out that the Arbitrator found that PPL did not argue that they are not regulated by the MPL. Def. Opp. at 7. I fail to see how this is relevant.

And finally, the Union argues that the Court is not authorized to overturn the Award based on an error of law, so even if the Arbitrator had erred as a matter of law, the Court may not overrule the Award. *Id.* at 7-8. As to this argument, I note that the Court is not reversing the Award based on an error of law. I am not holding that the Arbitrator's interpretation of the MPL was incorrect on its face—*i.e.*, that he should have held that "condition of employment" as it is used in the MPL means something else. Rather, I am holding that he erred by the mere fact that he went so far as to interpret the meaning of the MPL at all.

10

*Roadmaster Corp. v. Prod. & Maint. Emps. Loc. 504, Laborers' Int'l Union of N. Am., AFL-CIO*, 851 F.2d 886, 889 (7th Cir. 1988) (holding that the arbitrator improperly relied on statutes in his interpretation of the contract at issue); *Simpson*, 1981 WL 2241, at *5 (noting that had the arbitrator attempted to interpret a statute, he would have exceeded his authority); *McSkimming*, 759 F.2d 269, 271 (finding that an arbitrator exceeded the scope of his authority when the award was "expressly based upon his view of ERISA").

PPL's second overarching argument is that the Arbitrator exceeded the scope of his authority under the CBA by adding new contractual obligations to the CBA. Pl. Mot. at 8. Specifically, PPL argues that the when the Arbitrator "wrote into the contract an obligation to reimburse employees for doctor's notes," he violated the CBA, which provides that arbitrators "shall have no power to add to, or subtract from, or modify any of the terms and provisions of this Agreement, or Agreements supplementary [t]hereto." *Id.* at 8-9. PPL argues that Article II, Section 3 "does *not* give the arbitrator the authority to interpret or enforce state statutes, let alone *any and all* state statutes that could possibly apply to PPL. Nor does it give him the authority to rely on statutes to create new contractual obligations between the parties—authority expressly disclaimed by the CBA." *Id.* at 10 (emphasis in original). The Union's response to this is that the Arbitrator did not add a new contractual obligation, but rather "interpreted the parties' agreement that included a provision that incorporated Public Law into the parties' [CBA]." Def. Opp. at 9.

I again agree with PPL here. I do not hold that the Arbitrator wrote a new contractual obligation into the CBA when he interpreted Article II, Section 3 to include DOLI as an agency that regulated PPL or when he found that PPL must comply with the MPL. But I do agree with PPL that he wrote a new contractual obligation into the CBA when he interpreted the meaning of the MPL and said that the MPL requires that PPL reimburse employees for doctor's notes, which

11

is an interpretation that is neither clear on the face of the MPL nor has been widely accepted among courts.[7]

The Union's cross-motion for summary judgment, on the other hand, rests on its assertion that the Award draws its essence from the CBA. In the Union's eyes, the Court must uphold the Award because it is "rational[ly] . . . derived from the agreement." Def. Mot. at 11. Specifically, the Union argues that the Award is based in Article II, Section 3, and that it was through Article II, Section 3 that the Arbitrator concluded that DOLI, who enforces the MPL, is a governmental authority that regulates PPL, and that "condition of employment" as used in the MPL includes requirements to obtain sick pay. *Id.* at 11.

The Union points to the Arbitrator's reliance on the MPL throughout the Award, arguing that such "constant reference to the [MPL] speaks directly to his interpretation of the issue and the argument that was put before him." *Id.* at 12. Such reference includes the Arbitrator's discussion of Attorney General Jacobsen's 1976 memorandum analyzing the meaning of "condition of employment" as it is used in the MPL. *Id.*; Award at 19. In the memorandum, Jacobsen opined that "condition of employment" includes "terms of pay and benefits as well as requirements for hiring and firing." Award at 19.

I cannot accept the Union's reasoning, as it ignores the fact that the Arbitrator engaged in statutory interpretation of the MPL. The Union's argument that the Arbitrator's reference to the MPL "speaks directly to his interpretation of the issue and the argument that was put before him"

---

[7] PPL further notes that there is no private right of action under the MPL, which is enforceable only by DOLI, and thus "by making a violation of the MPL a violation of the CBA, the arbitrator effectively gave the Union a private right of action where the legislature intended that none exists," so "under [the Arbitrator's] reasoning, *any* violation of *any* law that applies to PPL is also a violation of the CBA, and an arbitrator has the authority to interpret *any* law that applies to PPL under the guise of adjudicating a union grievance." Pl. Mot. at 9-10 (emphasis in original). The Union responds that this is a "slippery slope" argument that "Defendant will now have the right to hold the Plaintiff accountable for any and all agency regulations," which should be rejected because "any and all future interpretations will still need to be based in the essence of the CBA." Def. Opp. at 10. I decline to address the "private right of action" argument and note instead that an arbitrator's award that is truly based on the CBA—not on statutory interpretation that is supposedly derived from the CBA—should be enforced.

cannot hold water and is entirely conclusory. Def. Mot. at 12. It is true that "the deference that is accorded to an arbitrator's interpretation of the collective bargaining agreement should also be accorded to an arbitrator's interpretation of the issue submitted." *High Concrete Structures*, 879 F.2d at 1219 (internal citation omitted). But an arbitrator's interpretation of the issues presented cannot be unfettered.

The three issues before the Arbitrator here were: (1) "Is the grievance arbitrable?"; (2) "If so, did the Company violate the Collective Bargaining Agreement by failing to reimburse Grievant, Kyle Ross, for obtaining the medical certification dated 12/26/21?"; and (3) "If so, what shall be the remedy?". Award at 2. It cannot be said that these questions presented authorized the Arbitrator to go beyond the four corners of the CBA, especially when the key question presented was whether "*the Company violate[d] the Collective Bargaining Agreement*." *Id.* (emphasis added).[8]

---

[8] Compare the circumstances here with two cases from the Fourth and Tenth Circuits.

First, in *Richmond, Fredericksburg & Potomac R.R.. Co. v. Transp. Commc'ns Int'l Union*, 973 F.2d 276 (4th Cir. 1992), the Fourth Circuit held that an arbitrator did not exceed the scope of his authority in holding that an employer violated a statute. The question presented to the arbitrator there was "whether the [employer] can unilaterally separate employees without an agreement with [the union.]" *Richmond*, 973 F.2d at 280. The Fourth Circuit held that the issue before the arbitrator based on the submission was "not only whether the collective bargaining agreement permitted the severance offer but also whether [the company] *could legally make such an offer*" and that the parties thus "in no way confined the arbitrator's authority to an examination of the collective bargaining agreement." *Id.* (emphasis added). Here, however, the parties *did* explicitly confine the Arbitrator's authority to an examination of the collective bargaining agreement when it asked the Arbitrator to determine whether "the Company violate[d] the Collective Bargaining Agreement." Award at 2. This limitation is in clear contrast to the question presented in *Richmond*, which did not even refer to the CBA.

Second, in *Furr's Supermarkets, Inc. v. United Food & Com. Workers Union, Loc. 1564*, 129 F.3d 130 (10th Cir. 1997) (unpublished table opinion), the question presented to the arbitrator was "whether employers violated their collective bargaining agreements (CBAs) with the union when they refused to renumerate employees for time and expenses associated with completing an alcohol-server program mandated by statute." *Furr's Supermarkets, Inc.* at *1. The employer contended that the arbitrator exceeded his scope of authority by relying on FLSA regulations to determine the meaning of the word "work" as it appeared in the CBA because "the parties' submissions . . . , which asked only whether the CBAs had been violated, placed any consideration of FLSA regulations and case law beyond the reach of the arbitrator." *Id.* at *2. The Tenth Circuit "acknowledge[d] that neither the parties' written submissions nor the arbitration provisions of the CBAs themselves affirmatively direct[ed] the arbitrator to consider extrinsic federal law as an interpretive aid," but found that it "need not decide as a general matter whether an explicit, affirmative authorization is necessary . . . because [it] conclude[d] [the] employers essentially conceded the issue during the hearing before the arbitrator." *Id.* at *3. *Furr's Supermarkets* admittedly leaves open the question of how much

Further, I find the argument that the Arbitrator referred to the Attorney General's memorandum, and therefore did not engage in his own statutory interpretation, unpersuasive. The memorandum is non-binding, and I decline to hold that the Arbitrator did not engage in statutory interpretation just because he referred to what "condition of employment" means according to a non-binding source. This is further evidenced by the fact that the Arbitrator said he would "go further than Jacobsen" and "find that the statutory duty imposed on employers [under the MPL] . . . applies to circumstances where the employee . . . is required to obtain a doctor's note in order to obtain sick pay, whether or not disciplinary action looms." Award at 19. I therefore reject the Union's argument that the Arbitrator's reliance on the Attorney General's memorandum precludes him from having engaged in statutory interpretation.[9]

In its Motion, the Union reiterates that the Court is required to give extreme deference to an arbitrator's decision, and that PPL is attempting to have the Court abuse its authority by considering the merits of the Award. Def. Mot. at 14-16. Indeed, the Union says, the question is not whether the Arbitrator reached the right result, but rather whether he based the Award on the essence of the agreement between the parties. *Id.* at 16. I agree with the Union that the question is not whether the Arbitrator reached the right result, and that is not what I am deciding here. Rather, as the Union correctly points out, I am determining whether the Arbitrator based the Award

---

authorization is needed by the parties to allow an arbitrator to rely on federal law when the question presented is whether a party violated a CBA, but its distinction from the case at hand is clear. First, the arbitrator in *Furr's Supermarkets* relied on federal law to determine the meaning of a word that appeared in the CBA, whereas here, the Arbitrator relied on outside sources to determine the meaning of a phrase that appears in a *statute*. Second, neither party has argued here that PPL "essentially conceded" that the Arbitrator may interpret the MPL, and it impliedly did not, as part of PPL's argument before the Arbitrator was that "the MPL . . . cannot be enforced through arbitration." Award at 18; *see also* ECF No. 22-1 (PPL's Post-Arbitration Hearing Brief) at 21 ("[T]he Arbitrator has no authority to consider the MDL [sic], let alone enforce it.").

[9] The Union also points to the Arbitrator's reliance on the CBA in determining that "the issue [is] arbitrable under the CBA" as further evidence that the Arbitrator's decision "draws its essence" from the CBA. Def. Mot. at 13. I fail to see how this is relevant as to whether the Award draws its essence from the CBA, as this conclusion by the Arbitrator merely speaks to whether he has jurisdiction to hear the issue at all.

on the essence of the CBA. But it cannot be said that interpreting the meaning of the MPL, which exceeds the scope of the Arbitrator's authority, is based on the essence of the CBA, which explicitly limits his authority.

### III. CONCLUSION

For the reasons discussed more fully above, PPL's Motion for Summary Judgment is granted and the Union's Motion for Summary Judgment is denied. The Award is vacated and the matter is remanded for further arbitration proceedings consistent with this opinion.